IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| AMY Y.,[1] | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 5:22-CV-245-BQ |
| | § |
| COMMISSIONER OF SOCIAL SECURITY, | § |
| | § |
| Defendant. | § |

## REPORT AND RECOMMENDATION

Plaintiff Amy Y. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her applications for supplemental security income and disability insurance benefits. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 7. The parties did not unanimously consent to proceed before a magistrate judge. After carefully considering the parties' briefing and arguments, the administrative record, and applicable law, the undersigned recommends that the United States District Judge vacate the Commissioner's decision and remand the case for further administrative proceedings.

### I.   Statement of the Case

Plaintiff applied for disability insurance benefits and supplemental security income benefits, alleging a disability onset date of July 15, 2019. Tr. 15, 179–94. The Social Security Administration (SSA) denied her application in September 2020, and again upon reconsideration in January 2021. Tr. 15, 52–84. Represented by counsel, Plaintiff appeared telephonically and

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

testified before an administrative law judge (ALJ) on December 8, 2021. Tr. 15, 29–51. An impartial vocational expert (VE) also appeared and testified. Tr. 15, 29–51.

The ALJ determined on January 28, 2022, that Plaintiff was not "disabled within the meaning of the Social Security Act" because her "substance use disorder is a contributing factor material to the determination of disability." Tr. 12, 23 (emphasis omitted). The Appeals Council denied Plaintiff's request for review. Tr. 1. Consequently, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.  Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2020); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If substantial evidence

supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2020). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2012); *see Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id*. If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id*. After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Even if the five-step process would compel a disability finding, a claimant "shall not be considered to be disabled for purposes of [the Social Security Act] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Consequently, if there is relevant evidence of alcoholism

or drug abuse, the Commissioner must determine whether the substance use "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). In this scenario, the Commissioner first conducts the sequential five-step analysis to evaluate disability based on the claimant's current limitations, without separating out the impact of the substance use. §§ 404.1535, 416.935. If there is an affirmative disability finding, the Commissioner then repeats the process to determine whether the claimant would still be disabled if he or she stopped using drugs or alcohol. §§ 404.1535, 416.935. Substance use is material—and the claimant is thus not eligible for benefits—if the claimant's remaining impairments are not disabling. §§ 404.1535, 416.935. The claimant bears the ultimate burden of proving that the substance use is not a contributing factor material to his or her disability. SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013); *see Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). To support a finding that substance use is material in a case involving an alleged mental impairment, however, the Commissioner "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of" drug or alcohol use. SSR 13-2p, 2013 WL 621536, at *9.

### III. Facts

Plaintiff claims she became disabled on July 15, 2019, due to mental health issues. Tr. 18–21. She was 50 years old on the alleged onset date and is now 54. Tr. 23. Plaintiff has a bachelor's degree in English literature and past relevant work as a sales clerk. Tr. 20, 22.

At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 18. The ALJ found at step two that Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder, amphetamine (or other stimulant) induced bipolar and related disorder, and

polysubstance abuse (methamphetamine and marijuana). *Id.* Accounting for Plaintiff's substance use, the ALJ determined at step three that Plaintiff met Listing 12.04 (depressive, bipolar and related disorders) of 20 C.F.R. part 404, subpart P, appendix 1. Tr. 18–19.

The ALJ then re-assessed Plaintiff's impairments assuming she stopped using illicit drugs. At step three, the ALJ found that Plaintiff would not have an impairment that meets or equals "the criteria of [L]istings 12.04, 12.06 and 12.15 if the substance use was stopped." Tr. 19. She next assessed Plaintiff's residual functional capacity (RFC) and found Plaintiff "capable of performing a full range of work at all exertional levels" if she stopped the substance use. Tr. 22. But due to her moderate non-exertional limitations, the ALJ limited Plaintiff to the performance of simple routine tasks, occasional interaction with others, "and no more than occasional changes in the work setting." Tr. 19–21. The ALJ relied on the testimony of the VE at steps four and five. Tr. 22–23. She first found that Plaintiff is unable to perform past relevant work. Tr. 22. Even so, the ALJ concluded that if Plaintiff stopped substance use, she "would be capable of making a successful adjustment to work that exists in significant numbers in the national economy," including food preparation worker, janitor, and housekeeper. Tr. 23. Accordingly, the ALJ concluded Plaintiff was not "disabled within the meaning of the Social Security Act" because she "would not be disabled if [s]he stopped the substance use." *Id.* (emphasis omitted).

Plaintiff raises one issue on appeal: "The ALJ's RFC determination is unsupported by substantial evidence as she constructed the RFC out of whole cloth." Pl.'s Br. 1, ECF No. 20 (emphasis omitted).

## IV. Discussion

### A. The Parties' Positions

Plaintiff challenges the ALJ's RFC finding within the substance use materiality analysis. The state agency consultants believed "there was insufficient evidence to complete a medical determination," but the ALJ considered "these opinions to be unpersuasive" because "new evidence received at the hearing level shows that [Plaintiff] has multiple severe mental impairments with some degree of limitation." *Id.* at 7 (quoting Tr. 22). Plaintiff argues that there are "no mental limitation opinions in the record" and therefore "effectively no evidence from which the ALJ" could build a bridge between the evidence and the final determination. *Id.* In Plaintiff's view, the evidence "clearly demonstrates [her] mental impairments would cause limitations," but "[c]ompletely absent from the record is how [those] impairments would translate to functional limitations." *Id.* at 8. She asserts that "the ALJ's RFC determination lacks any support from substantial evidence" because "the ALJ did not rely on any medical opinion in constructing the RFC." *Id.* at 9–10.

Plaintiff also contends that the ALJ's RFC analysis is to some degree inconsistent. The ALJ repeatedly assessed Plaintiff as capable of performing the "full range of work at all exertional levels." *Id.* at 9; *see* Tr. 21–23. Yet her analysis also includes a paragraph summarizing the need for "sedentary exertional activities." Pl.'s Br. 9 (quoting Tr. 22). Plaintiff notes that she "did not claim any physical limitations and the record is absent [as to] any physical findings." *Id.* As a result, Plaintiff argues that the ALJ "failed to build a logical bridge between her findings and the ultimate conclusion." *Id.*

The Commissioner counters that the ALJ properly assessed Plaintiff's RFC and substantial evidence supports the finding. Def.'s Br. 3, ECF No. 22. The Commissioner points to evidence

6

that purportedly supports the RFC determination and "contradicts" Plaintiff's claimed disabling limitations. *Id.* at 3–6. Further, the Commissioner contends that "the ALJ here properly interpreted the medical information" and need not have adopted a particular physician's assessment. *Id.* at 7–9. An ALJ's decision should be affirmed so long as the RFC assessment is supported by substantial evidence. *Id.* at 9.

Next, the Commissioner rejects Plaintiff's secondary argument, i.e., the ALJ's apparent inconsistent exertional analysis, believing it to be "at most, a scrivener's error, or a cut-and-paste error, that does not warrant remand." *Id.* "Plaintiff has not established prejudice or shown that remand for an ALJ's decision without the emphasized paragraph might lead to a different result," and the Court should therefore affirm. *Id.* at 10.

In reply, Plaintiff argues that the Commissioner "misses the point" because an ALJ may not "construct[] the RFC without any guidance from a medical source." Pl.'s Reply 2, ECF No. 23. She maintains that the evidence "clearly demonstrates Plaintiff's mental impairments would cause limitations," but there is no evidence addressing how those "impairments would translate to functional limitations," thereby leaving the ALJ "to insert her own lay medical opinion." *Id.* at 3. Moreover, Plaintiff contends that "the ALJ's error in offering two completely divergent conclusions cannot easily be distinguished as a scrivener's error." *Id.* at 4. Plaintiff claims the error affected her substantial rights because she would be found disabled under the guidelines if she were limited to sedentary work. *Id.* at 3–4. She asks the Court to vacate the Commissioner's final decision and remand the case for further administrative proceedings. *Id.* at 4.

**B. The scrivener's error does not impact Plaintiff's substantial rights.**

At the outset, the Court rejects Plaintiff's argument involving the ALJ's paragraph assessing Plaintiff's need for sedentary exertional activities. Where the ALJ's "intent is apparent,

any error in" her opinion "may be excused as simply a scrivener's error." *Galvan v. Berryhill*, No. 4:15–CV–3718, 2018 WL 993882, at *3 n.3 (S.D. Tex. Feb. 20, 2018) (citing *Dukes v. Colvin*, No. 3:14–CV–173–BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015)). The ALJ's inclusion of a paragraph summarizing Plaintiff's physical ailments and the need for sedentary exertional limitations is an obvious cut-and-paste error. Throughout the rest of the ALJ's opinion, she consistently found only mental limitations and assessed Plaintiff as capable of performing work at all exertional levels. *See* Tr. 18–23. As Plaintiff herself initially points out, "Plaintiff did not claim any physical limitations and the record is absent [as to] any physical findings." Pl.'s Br. 9. On the other hand, the relevant paragraph discusses a claimant with obesity, pain and radiculopathy, hypothyroidism, high blood pressure, and the need for several exertional limitations. Tr. 22. The undersigned finds that the paragraph was an obvious mistake, and it is apparent that the ALJ intended to impose no exertional limitations.

### C. The ALJ's mental RFC finding is not supported by substantial evidence.

The ALJ found that, if Plaintiff were to stop using drugs, her remaining mental impairments would not be disabling, and she would have the ability to perform work at all exertional levels with certain nonexertional limitations. Tr. 21–23. Plaintiff contends that the ALJ erred in assessing her RFC without medical opinion evidence demonstrating how Plaintiff's mental impairments translate to functional limitations. Pl.'s Br. 8. The undersigned agrees.

#### 1. Residual Functional Capacity and the *Ripley* Standard

"Determining a claimant's [RFC] is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (internal citation omitted). The ALJ must consider "the totality of evidence in the record" including the claimant's "medical history,

8

medical signs and laboratory findings, statements about the impact of symptoms, daily activities, medication, and other treatment." *Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (citing 20 C.F.R. § 404.1529(a)–(d)). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018); *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *5 & n.4 (N.D. Tex. Dec. 4, 2020).

"There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Nic R. v. Kijakazi*, No. 3:22-cv-00106-K-BT, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citation omitted), *R. & R. adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). "Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Id.* at *5 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)). The court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

In *Ripley*, the Fifth Circuit observed that the record included "a vast amount of medical evidence establishing that [the claimant] ha[d] a problem with his back," but it did "not clearly establish" what effect that "condition had on his ability to work." *Id.* Not only were there no "reports from qualified medical experts" as to the claimant's ability to work, but "[t]he only evidence regarding [the claimant's] ability to work came from [his] own testimony." *Id.* at 557 & n.27. As a result, substantial evidence did not support the ALJ's RFC determination because the court could not "determine the effects [the claimant's] conditions, no matter how 'small,' on his ability to . . . work." *Id.* at 557–58 & n.27. Later discussing *Ripley*, the Fifth Circuit reaffirmed

9

that "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam). "Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id.* The court ultimately held that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented by" the claimant's conditions because there was "*no evidence supporting the ALJ's finding that*" she "could perform light work with [those] conditions." *Id.* at 831–32.

Simply stated, an ALJ may not "independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities . . . even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply." *Thornhill v. Colvin*, No. 3:14–cv–335–M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015). Substantial evidence requires "evidence of the effects the claimant's medical conditions have on her ability to work." *Moreno v. Astrue*, No. 5:09–CV–123–BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (citing *Ripley*, 67 F.3d at 557), *R. & R. adopted by* 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010); *see Ripley*, 67 F.3d at 557 (reversing because "the record d[id] not clearly establish . . . the effect [the claimant's] condition had on his ability to work").

### 2. The record does not clearly establish the effects of Plaintiff's severe mental impairments on her ability to work if she stopped the substance use.

The ALJ found that Plaintiff has moderate mental limitations in the following areas: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; (3) interacting with others; and (4) adapting or managing herself. Tr. 20–22. The ALJ first noted Plaintiff's educational record and apparent lack of cognitive deficits or significant memory issues. Tr. 20 (citing Exs. 3E, 1F, 2F, 3F), 37. As to the second category, the

ALJ relied on Plaintiff's subjective complaints about thinking and concentration, her ability to perform routine tasks and enjoy hobbies, and the mental health records suggesting "that she has displayed normal concentration and attention at times." Tr. 20 (citing Ex. 3F), 35–37. And based on Plaintiff's testimony and calm, effective interactions with providers, the ALJ determined Plaintiff's mental impairments support only moderate limitations in interacting with others. Tr. 20 (citing Exs. 2F, 3F), 35–37. Finally, the ALJ noted Plaintiff's history of homelessness but observed that Plaintiff testified "she has lived with a friend for the past two years" and assists with household chores. Tr. 20 (citing Ex. 3F), 35–37. Plaintiff's treatment records documented appropriate dress and grooming, fair judgment and insight during mental status exams, and personal hygiene maintenance. Tr. 20 (citing Exs. B4E, 2F, 3F). Thus, the ALJ again concluded that Plaintiff demonstrated "no more than" moderate limitations. *Id.*

The ALJ then rejected findings from the state agency consultants. Tr. 22. The first consultant considered Plaintiff's impairments non-severe and determined there was "insufficient evidence to complete a medical determination." Tr. 55, 60. The second consultant agreed. Tr. 71, 80. As a result, neither consultant completed an RFC assessment. Tr. 55–56, 60–61, 71–72, 80–81. The ALJ found both opinions unpersuasive considering the "new evidence" demonstrating that Plaintiff "has multiple severe mental impairments with some degree of limitation." Tr. 22. The ALJ cited to no other medical opinions in the record in assessing Plaintiff's RFC.

The problem with this approach is that an ALJ may not "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003) (per curiam); *see Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (finding error where the ALJ "attempted to compensate for" the claimant's disorder, "[b]ut other than the opinions of the two SAMCs (which

11

the ALJ rejected), the record lack[ed] medical evidence that would support a determination that" the claimant could work despite that impairment). An ALJ is free to reject medical opinions provided that he does not "then independently decide the effects of a claimant's impairments on her ability to perform work-related activities." *Greer v. Comm'r of Soc. Sec.*, No. 7:21-cv-00032-O-BP, 2022 WL 4239356, at *7 (N.D. Tex. Aug. 9, 2022) (cleaned up), *R. & R. adopted by* 2022 WL 4240948 (N.D. Tex. Sept. 14, 2022). Indeed, *Ripley* stands for the proposition that an RFC finding is not supported by substantial evidence where the record confirms the existence of a claimant's medical condition, but it does not otherwise make clear what effect that condition has on the claimant's ability to work. *Ripley*, 67 F.3d at 557.

As the Commissioner correctly observes, the ALJ did note that Plaintiff had not required inpatient psychiatric hospitalization nor sought emergent or immediate mental health treatment within the relevant period. *See* Def.'s Br. 6; Tr. 21. The ALJ pointed to "a significant gap in [Plaintiff's] history of treatment from October 2019 through June 2020" and emphasized that Plaintiff "has not been entirely compliant in taking prescribed medications." Tr. 21. The ALJ found that "the longitudinal record does not establish a pattern of continuing severity while both psychotropic medications are taken as prescribed and [she] maintains sobriety from drugs." *Id.*

Such evidence, or lack thereof, certainly factors into the overall calculus of determining whether Plaintiff produced evidence supporting a finding that she would still be disabled without the substance abuse. *See, e.g., Pridgeon v. Comm'r of Soc. Sec.*, No. 4:20-cv-01178-O-BP, 2022 WL 2079895, at *5 (N.D. Tex. Apr. 1, 2022), *R. & R. adopted by* 2022 WL 2078212 (N.D. Tex. June 9, 2022). Nevertheless, for the purpose of the review at hand, this question stands independent of the ultimate issue as to how Plaintiff's remaining impairments impact her ability to work and whether substantial evidence supports the ALJ's RFC finding. *See Cripps v. Saul*,

No. 3:19-CV-1501, 2020 WL 3979681, at *9 n.9 (W.D. La. June 29, 2020) (noting that "the ALJ's findings still must be supported by substantial evidence" even though the "plaintiff bears the burden of proving that [substance use] is *not* a contributing factor material to her disability"), *R. & R. adopted by* 2020 WL 3979670 (W.D. La. July 14, 2020); *McNeal v. Colvin*, No. 3:11–CV–02612–BH–L, 2013 WL 1285472, at *30–31 (N.D. Tex. Mar. 28, 2013) (remanding because the ALJ's materiality determination was not supported by substantial evidence given that the ALJ rejected the medical opinions and "made her own 'estimation' of" the plaintiff's RFC). The ALJ found support for Plaintiff's remaining impairments, stating that her "ability to perform work at all exertional levels has been compromised by nonexertional limitations," even if she stops using drugs. Tr. 23. Without guidance from a medical opinion, the ALJ attempted "to account for" those remaining impairments by limiting Plaintiff "to the performance of simple routine tasks"; occasional interaction with coworkers, supervisors, and the public; and "no more than occasional changes in the work setting." Tr. 22.

In doing so, the ALJ relied on evidence that merely describes Plaintiff's conditions, rather than demonstrating her ability to work despite those impairments. *See Jim S. v. Saul*, No. 3:18-CV-2179-BH, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (finding error where the ALJ relied on medical records to assess the claimant's RFC without identifying the medical opinions that were the source of the imposed mental limitations); *Turner v. Colvin*, No. 3:13–CV–1458–B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) ("[E]vidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination."). The record does not clearly establish how Plaintiff's conditions would impact her ability to work with the imposed nonexertional limitations, and there are no medical opinions to otherwise serve as the foundational basis for that decision. *See Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-

13

1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (concluding that although "the RFC is *ultimately* the ALJ's determination," there was no apparent "*foundational* basis for that decision" where "no treating, examining, or consultative resource reviewed the impact of [p]laintiff's conditions on his ability to work"); *cf. Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (finding RFC supported by substantial evidence where the ALJ considered "medical opinions and prior administrative findings" but "did not adopt a specific physician's assessment"); *Brown v. Colvin*, No. 3:13–cv–111–O, 2014 WL 351647, at *4 (N.D. Tex. Jan. 31, 2014) (holding that consultative examiner's "opinion constitute[d] substantial evidence in support of the Commissioner's" substance use materiality determination). It therefore "appears the ALJ relied on his own interpretation of the medical and other evidence, which [s]he may not do." *Alexander v. Saul*, No. 7:19-cv-00127-M-BP, 2020 WL 4573847, at *4 (N.D. Tex. July 9, 2020), *R. & R. adopted by* 2020 WL 4569034 (N.D. Tex. Aug. 7, 2020). Accordingly, the ALJ erred in making an RFC determination without evidence in the record clearly establishing the impact of Plaintiff's mental impairments on her ability to work.

Nevertheless, reversal is warranted only if Plaintiff was prejudiced by the error. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). "Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008). Courts in the Northern District have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination. *See, e.g., Kirkland v. Comm'r of Soc. Sec.*, No. 4:22-cv-759-O-BP, 2023 WL 3357597, at *6 (N.D. Tex. Apr. 25, 2023), *R. & R. adopted by* 2023 WL 3362633 (N.D. Tex. May 10, 2023); *Lozano v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-1365-P, 2023 WL

2618132, at *6 (N.D. Tex. Mar. 2, 2023), *R. & R. adopted by* 2023 WL 2619311 (N.D. Tex. Mar. 23, 2023); *Graves v. Kijakazi*, No. 3:22-CV-0107-L-BH, 2023 WL 2025247, at *17 (N.D. Tex. Jan. 31, 2023), *R. & R. adopted by* 2023 WL 2025052 (N.D. Tex. Feb. 15, 2023); *Martinez v. Kijakazi*, No. 3:20-CV-3282-BH, 2022 WL 4590577, at *22 (N.D. Tex. Sept. 29, 2022).

Here, the ALJ initially determined that Plaintiff is disabled, but then, based upon an improperly supported RFC, found that Plaintiff could work with nonexertional limitations if she stopped using drugs, meaning that Plaintiff's substance use is a contributing factor material to the disability determination. Tr. 23. Because this finding resulted in the ultimate conclusion that Plaintiff is not eligible for benefits, it is not inconceivable that the ALJ may have reached a different result but for the error. *See Alexander*, 2020 WL 4573847, at *4 ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." (citation omitted)); *see also Vanacor v. Kijakazi*, No. 22-1325, 2023 WL 3939783, at *17 (E.D. La. Mar. 9, 2023) (remanding because "the ALJ erred in assessing the RFC during the [substance use] analysis without substantial evidence in the record for her materiality determination and conclusion that, if plaintiff stopped substance and alcohol use, he would be able to work"), *R. & R. adopted by* 2023 WL 3935029 (E.D. La. June 8, 2023). The district judge should remand the case for further administrative proceedings.

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court **VACATE** the Commissioner's decision and **REMAND** the case for further administrative proceedings.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 25, 2023.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE